**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| IN RE:                                )<br>MJL CATTLE CO., LLC,         )<br>MITCHELL J. LEONARD,        )<br>            Debtors.            )<br>                                        )<br>                                        )<br>_____) | Case No. 09-20845-DRD-11<br>(Lead Case)<br><br>Case No. 09-21458-DRD-11<br>(Consolidated Case) |

## ORDER DENYING DEBTORS' EMERGENCY MOTION TO ENFORCE THE AUTOMATIC STAY

This matter comes before the Court on the emergency motion filed by the debtors ("Debtors") against the State of Missouri, by and through the Missouri Real Estate Commission ("MREC"), Gary Sevenans ("Sevenans"), Donald Collins ("Collins"), Randy Byers ("Byers") and Darin Messersmith ("Messersmith") or collectively ("Complainants"). Debtors see to enforce the automatic stay; an order holding the individual Complainants in civil contempt for violating § 362(a)(1); punitive damages; and attorney's fees. This is a core proceeding under 28 U.S.C. §157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies Debtors' motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed for protection under Chapter 11 of the Bankruptcy Code on April 23, 2009 and July 14, 2009 ("Petition Dates") and on September 30, 2009 the cases were consolidated by the Court as provided, inter alia, under 11 U.S.C. § 105. Debtors' Plan for reorganization was confirmed on September 27, 2010.

Debtor Mitchell J. Leonard ("Leonard") is a real estate broker duly licensed under the

laws of the State of Missouri. As such, Leonard is subject to the laws and regulations promulgated by the MREC, an agency and/or instrumentality of the State of Missouri charged, by statue, with the regulation of transactions in real estate in the state of Missouri by or through agents or brokers. Post-petition, Leonard was served by the MREC with four (4) "Sworn Statements of Complaint," which it received from Sevenans, Collins, Byers and Messersmith. In each of the complaints the general accusation was that Leonard was "heading a bait and switch cattle scheme" and for that, and other reasons involving wrongdoings related to his cattle business, his real estate license should be revoked by the MREC. No monetary award is sought by any of the individual Complainants.

## II. LEGAL ANALYSIS

### A. The Automatic Stay

Section 362 of the Bankruptcy Code provides, in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed . . . operates as a stay, applicable to all entities, of -

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have commenced before the commencement of the case under this title, **or to** recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(1).

Section 362(a)(1) is designed to stay, among other matters, the commencement or continuation of administrative proceedings against the debtor. 11 U.S.C. § 362(a)(1); *In re National Cattle Congress, Inc.*, 179 B.R. 588, 594 (Bankr. N.D. Iowa 1995). The House Report on the application to be given § 362(a)(1) states: "all proceedings are stayed, including

arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals." *Cattle Congress*, 179 B.R. at 594.

The MREC argues initially that Leonard's real estate license is not property of the estate and the automatic stay is therefore not applicable because its proceeding is not an attempt to exercise control over or to obtain possession of property of the estate. Debtors contend the real estate license is property of the estate. The Court need not decide this issue, however, since as the Debtors also point out, the administrative proceeding initiated by the Complainants before the MREC is subject o § 362(a)(1), regardless of whether the real estate license is property of the estate. That paragraph prohibits the commencement or continuation of any administrative proceeding against the Debtor that was or could have been commenced before the commencement of the case. Since the proceeding before the MREC is based upon allegations of conduct occurring before the filing of the Chapter 11 petition by Leonard, the proceeding is stayed by paragraph (1) of § 362(a), a point which counsel for the MREC eventually conceded at the hearing on the motion.

An exception to the broad sweep of § 362(a)(1), is found in § 362(b)(4) which states:

(b) the filing of a petition...does not operate as a stay-

. . . . .

> (4) under subsection (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organizations's police or regulatory power.

3

11 U.S.C. § 362(b)(4).

Debtors argue that the exception found in § 362(b)(4) cannot not apply in this instance because the MREC's *potential* revocation of the licence directly conflicts with control of property of the bankruptcy estate. Debtors cite *United States v. Commonwealth Co., Inc.*, 913 F.2d 518, 523 (8th Cir. 1990) and *State of Missouri v. United States Bankruptcy Court for the Eastern District of Arkansas*, 647 F.2d 768, 776 (8th Cir. 1981) as authority for the proposition that the law in the Eighth Circuit is that if a government agency's laws or regulations directly conflict with the *res*, or property of the estate, then the exception found in § 362(b)(4) does not apply. Debtors' reliance on these cases is flawed because they were decided based on a prior version of the Bankruptcy Code.

Prior to 1998, § 362(b)(4) only acted to except actions stayed by § 362(a)(1). In 1998, however, Congress amended § 362(b)(4) by adding subsection (a)(3), thereby expanding the scope of its exception to expressly cover proceedings which contemplate obtaining possession or control of property of the Bankruptcy estate. *See* 11 U.S.C. § 362(b)(4). Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A finding by the Court that the exception found in § 326(b)(4) is inapplicable because the governmental agency laws and regulations directly conflicted with property of the Bankruptcy estate would essentially be to ignore Congress' 1998 amendment of § 362(b)(4), which this Court cannot do. *See Go West Entertainment, Inc. v. New York State Liquor Authority*, 387 B.R. 435, 440 (Bankr. S.D. N.Y. 2008) (Court found that revocation of liquor license came within the purview of § 362(b)(4), and that case cited by Debtor was decided prior to the amendment of § 362(b)(4) which expressly

4

covers State actions designed to obtain or exercise control over a debtor's property); *see also Emerald Casino, Inc. v. Illinois Gaming Board*, 2003 WL 23147946 (N.D. Ill.) (the 1998 amendment to the Bankruptcy Code of § 362(b)(4) expressly contemplates allowing government regulatory and police action to "obtain possession or property of the estate ... or to exercise control over property of the estate").

Although the opinion in *Commonwealth* was based on a prior version of § 362(b)(4), and therefore, unpersuasive authority for determining the parameters of the § 362(b)(4) exception in the manner Debtors proposed; it does provide guidance regarding the "pecuniary interest" or "pecuniary purpose" test, which remains the appropriate test to analyze whether the exception applies to a governmental regulatory or police action.  The relevant inquiry under the "pecuniary interest" test is whether the "specific acts the government wishes to carry out ... would result in an economic advantage to the government or its citizens over third parities in relation to the debtor's estate." *Commonwealth,* 913 F.2d at 523 *citing In re Charter First Mortgage, Inc*., 42 B.R. 380, 382 (Bankr. D. Or. 1984).  The "pecuniary interest" test includes determining whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor's estate, whether on its own claim, or on the nongovernmental rights of private parties.  *See In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004) *citing In re Fitch*, 123 B.R. 61, 63 (Bankr. D. Idaho 1991).

In this instance Debtors argue that the "pecuniary interest test" is tilted in the individual Complainants' favor and, therefore; the § 362(b)(4) exception should not apply because Sevenans, Collins, Byers and Messersmith are attempting, through the MREC, to obtain a

pecuniary advantage over other creditors by "blackmailing" Leonard with the licensure revocation proceeding. The facts do not support Debtors' assertion. The Court notes that each of these four (4) creditors is scheduled to receive 100% satisfaction of their claim under the Plan. By filing the complaints with the MREC, the Complainants actually risk Leonard losing his licence to sell real estate and his ability to produce income; therefore, the result of the investigation may actually be financially *disadvantageous* to the individual Complainants and Debtors. The MREC has been asked to investigate and *potentially* pursue revocation of Leonard's real estate license, which the Court finds is not an action by the MREC to recover from property of Debtors' estate or receive any pecuniary advantage for itself or the citizens of Missouri. As noted above, no monetary award or fines are sought, either for the State or the individual Complainants. *See McMullen*, 386 F.3d at 325 (In an administrative investigation to determine whether revocation, suspension, or refusal to renew debtor's real estate license was appropriate for debtor who improperly retained a cash deposit, Court held real estate commission served to protect the public safety and welfare, rather than achieve a pecuniary gain).

Under the facts of this case, it is not necessary to make a finding regarding whether Leonard's license constitutes property of the estate. "The state power of licensure, which safeguards the public from wrongful future conduct of corrupt or incompetent professionals, falls squarely within the purview of the subsection 362(b)(4) exception to the automatic stay." *McMullen*, 386 F.3d at 325. The Court finds that whether Leornard's license is property of the estate or not, the filing of the complaints by Sevenans, Collins, Byers and Messersmith, and the MERC's investigation and *possible* revocation of Leonard's real estate license, do not result in a pecuniary advantage to the MREC, the individual Complainants or third parties; therefore, the

6

governmental exception found in § 362(b)(4) applies.

### B. The MREC'S Statutory Authority

Debtors argue that the MREC lacks the statutory authority required to investigate the facts alleged in the complaints it received from Sevenans, Collins, Byers and Messersmith. In each of the four (4) complaints, the matters complained about related to Leonard's wrongdoings in the cattle industry rather than in the real estate industry. Debtors assert that Mo. Rev. Stat. § 339.100.1 limits the MREC's authority to investigate to only those matters that are "real estate-related."[1] Debtor asserts that because the statute limits the investigatory authority, the MREC does not have "police or regulatory power" to investigate cattle-related complaints, therefore, § 362(b)(4) cannot apply.

The MREC relies on Mo. Rev. Stat. § 339.100.2(19) as authority to assert that it has the statutory power investigate the complaints.[2] The MREC further argues that within the complaints are multiple additional possible bases for it to initiate an investigation, including: violations of the Missouri Merchandising Practices Act; false statements on the MREC's applications and renewals; and previously undisclosed felony conviction(s) or guilty plea(s). The MREC argues that because it is charged with regulation of the Missouri real estate practice, in order to ensure that Missouri citizens are not subjected to unscrupulous real estate professionals,

---

[1] Section 339.100.1 states in relevant part: "The commission may, upon its own motion, and shall upon receipt of a written complaint filed by any person, investigate any real estate-related activity of a licensee . . . ." Mo. Rev. Stat. § 339.100.1.

[2] Section 339.100.2(19) states that: "[t]he commission may cause a complaint to be filed with the administrative hearing commission. . . against any person or entity licensed under this chapter . . . for any one or combination of the following acts:
. . .
(19) Any other conduct which constitutes untrustworthy, improper or fraudulent business dealings, demonstrates bad faith or incompetence, misconduct, or gross negligence"

it has the authority to investigate alleged wrongdoings by licensed real estate professionals "no matter where such bad actors earned their stripes."

The Court notes that there appears to be a disconnect between the MREC's statutory authority to investigate complaints under Mo. Rev. Stat. § 339.100.1, which expressly limits investigations to "real estate-related" activity, and its power to institute proceedings against licensed individuals under Mo. Rev. Stat. § 339.100.2, which significantly broadens actions which may result in disciplinary action. Because the Court has concluded it is inappropriate for it to purport to tell the MREC what its jurisdiction is, the Court declines to decide this issue. Were it compelled to do so, however, the Court thinks it likely it would resolve this apparent conflict in favor of the MREC, because the power to issue complaints is quite broad and it would be anomalous to hold that while the agency could initiate a complaint with regard to certain conduct, it could not investigate it. The issue of the agency's power, however, should be decided in the first instance by the agency. This Court should decide only whether what it purports to do is encompassed by an available exception to the scope of the automatic stay.

The debtor in *Board of Governors of Fed. Reserve Syst. v. MCorp. Fin., Inc.*, 502 U.S. 32, 40-41, 112 S.Ct. 459 (1991), argued that in order for § 362(b)(4) to apply, there first had to be a determination that the proposed police or regulatory power, of the relevant state agency, was legitimate. *MCorp.*, 502 U.S. at 40. Justice Stevens, joined by all of the other Justices, except Justice Thomas who took no part in the consideration or decision of the case, rejected debtor's argument. Justice Stevens opined that requiring bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity is problematic, "both because it conflicts with the broad discretion Congress has expressly granted many

administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts." *Id*. In this case, Debtors are asking the Court to deny that § 362(b)(4) applies because the MREC has no police or regulatory power to investigate complaints that it receives outside the scope of "real estate-related" activity. The MREC is the most appropriate entity to interpret whether it has the authority to investigate and pursue disciplinary action against a real estate agent, licensed under the State of Missouri pursuant to the statutes promulgated by Congress, not this Court.

### C. Bankruptcy Court's Authority under 11 U.S.C. § 105(a)

Debtors are not left without recourse if the MREC were to take action which negatively impacts Debtors' Bankruptcy estate. "The Bankruptcy Court has 'ample other powers' to stay such an action . . . including the discretionary power under 11 U.S.C. § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Commonwealth*, 913 F.2d at 527. Discretionary stays under § 105(a) will be granted only if a party shows a necessity for a stay. *Id*. In other words, even though the Court finds that § 362(b)(4) applies to the MREC's regulatory power to investigate the complaints it received regarding Leonard, the Court may use its powers under § 105(a) to enjoin the MREC from interfering with Debtors' property if properly requested to do so and if the facts so require.

### III. CONCLUSION

For all the foregoing reasons, the Court denies Debtors' motion to enforce the automatic stay; denies Debtors' request to hold Sevenans, Collins, Byers and Messersmith in civil contempt; and denies Debtors' request for punitive damages and attorney's fees. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

ENTERED this 15th day of November, 2010.

/s/ Dennis R. Dow
United States Bankruptcy Judge

Copies to:
James F. B. Daniels
Jeff Klusmeier